986 P.2d 288

Shirley ACOBA, fka Shirley Romero, individually, and as Special Administrator of the Estate of Renato Romero and on behalf of Renalee S. Romero, a minor, Plaintiff–Appellant,

v.

GENERAL TIRE, INC., an Ohio corporation, Bridgestone/Firestone, Inc., an Ohio corporation, Dillingham Construction Pacific, Ltd., a Hawai'i corporation, Rubber Master, a corporation, Defendants/Cross–Claim Plaintiffs/Cross–Claim Defendants–Appellees,

Caterpillar, Inc., a Delaware corporation, Defendant/Cross–Claim Defendant–Appellee,

John Does 2–10, John Doe Partnerships 2–10, John Doe Corporations 2–10, John Doe Government Entities 2–10, Defendants.

Lorena Kashiwamura and Renato Romero, Jr., Plaintiffs,

v.

General Tire, Inc., an Ohio corporation, Bridgestone/Firestone, Inc., an Ohio corporation, Dillingham Construction Pacific, Ltd., a Hawai'i corporation, Rubber Master, a corporation, Defendants/Cross–Claim Plaintiffs/Cross–Claim Defendants–Appellees,

Caterpillar, Inc., a Delaware corporation, Defendant/Cross–Claim Defendant–Appellee,

John Does 2–10, John Doe Partnerships 2–10, John Doe Corporations 2–10, John Doe Government Entities 2–10, Defendants.

No. 19451.

Supreme Court of Hawai'i.

Oct. 20, 1999.

2

Laureen L. Martin (Michael K. Tateishi and Shannon S. Okada, Wailuku, with her on the briefs), for plaintiff-appellant.

Deborah K. Wright (Keith D. Kirschbraun with her on the brief), Wailuku, for defendant-appellee Bridgestone/Firestone, Inc.

Elton John Bain (Paul M. Iguchi with him on the brief), Honolulu, for defendant-appellee Countrywide Industries, Inc.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by KLEIN, J.

This appeal arises out of a products liability action by plaintiff-appellant Shirley Acoba (Acoba), individually and as special administrator of the Estate of Renato Romero (Romero) and on behalf of their minor daughter, Renalee Romero (Renalee), against defendants-appellees General Tire, Inc. (General Tire), Bridgestone/Firestone, Inc. (Firestone), Dillingham Construction Pacific, Ltd. dba Hawaiian Bitumuls & Paving Co. (Dillingham), Rubber Master/Countrywide Industries (Countrywide), and Caterpillar, Inc. (Caterpillar) (collectively, defendants).

On appeal, Acoba argues that the circuit court erred in: (1) granting in part and denying in part her motion to compel discovery by Firestone; (2) refusing to allow her additional time to complete discovery before ruling on defendants' motions for summary judgment; (3) allowing Firestone and Dillingham to file supporting documents the day before and the morning of the hearing; (4) granting summary judgment in favor of Firestone; (5) granting summary judgment in favor of General Tire and Countrywide; (6) granting summary judgment in favor of Dillingham; and (7) denying her motion for reconsideration of its order granting Firestone's motion for summary judgment.

Firestone counterargues that: (1) the circuit court properly granted its summary judgment motion in its entirety; (2) the circuit court did not abuse its discretion in denying Acoba's motion to compel discovery; (3) the circuit court did not abuse its discretion in granting its motion for summary judgment without allowing Acoba additional time to conduct discovery; (4) its filing of a reply memorandum and objections to Acoba's opposition to its summary judgment motion was not improper under Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990); and (5) the circuit court properly denied Acoba's motion for reconsideration.

Countrywide argues that the circuit court correctly granted its motion for summary judgment because Acoba failed to present any evidence to establish a duty upon it to warn Romero, a veteran tire repairman, of the dangers of multi-piece rim assemblies manufactured and sold by another company. Dillingham, General Tire, and Caterpillar did not file answering briefs.

For the reasons set forth below, we hold that the circuit court did not err in: (1) denying Acoba's motion to compel answers to interrogatories 13 and 20; (2) permitting Firestone and Dillingham to file supporting documents the day before and the morning of the summary judgment hearing; (3) refusing to permit Acoba additional time to complete discovery; (4) granting summary judgment in favor of Firestone on the issue

of its failure to warn; (5) granting summary judgment in favor of General Tire and Countrywide regarding their failure to warn; and (6) granting summary judgment in favor of Dillingham. However, we hold that the circuit court erred in: (1) ruling that the affidavits submitted by Acoba did not comply with HRCP Rule 56(e) (1990); and (2) granting summary judgment in favor of Firestone on the issues of Firestone's (a) strict liability for defective design and (b) negligence for defective design. Accordingly, we vacate the circuit court's order granting summary judgment on the issues of Firestone's strict liability and negligent design and remand for further proceedings consistent with this opinion. In all other respects, we affirm.

## I. BACKGROUND

Romero was employed by Ken's Tire as a tire repairman. On December 10, 1991, Romero was sent to Hawaiian Bitumuls to repair a tire on a road grader, an off-road construction vehicle. Romero removed and disassembled the tire and multi-piece rim assembly from the grader. The rim assembly consisted of two components, a Firestone type RHT5° rim base manufactured in 1952 and a Firestone type RIT lock ring manufactured in 1940.[1] In reassembling the tire, Romero discovered that the lock ring was rusty and worn. Romero called his supervisor at Ken's Tire, Ed Shimabuku (Shimabuku), and requested that a replacement lock ring be delivered to him. Shimabuku testified by deposition that he told Romero not to use the worn lock ring and to wait for a replacement. Shimabuku located a replacement and radioed Romero. He again told Romero to not use the old lock ring and that the replacement would be delivered to him. While waiting for the replacement to arrive, Romero decided to reuse the lock ring. He did so without incident and radioed Ken's Tire, informing them that a replacement lock ring was no longer necessary. While Romero was placing the wheel back onto the grad-

er, the lock ring separated from the rim base and the tire exploded. The lock ring slammed into Romero's head, crushing his skull and propelling him back several feet into the side of his pickup truck. The truck sustained damage due to the force of the impact. Romero was pronounced dead approximately one hour later.

On October 7, 1993, Romero's wife, Shirley Acoba, guardian ad litem of their twelve-year-old daughter, Renalee Romero, and administrator of the Estate of Renato Romero, filed a products liability action on behalf of Renalee against: General Tire, the tire manufacturer and distributor; Firestone, the manufacturer of the rim and lock ring; Countrywide, the manufacturer and distributor of the inner tube; Caterpillar, the manufacturer and distributor of the road grader; and Dillingham, the owner and operator of the road grader.

As against Dillingham, Acoba alleged negligent failure to warn and/or maintain and negligent failure to provide protective safety equipment. As against all other defendants, Acoba alleged the following: (1) breach of express warranty; (2) breach of implied warranty of fitness for intended purpose; (3) breach of implied warranty of merchantability; (4) negligent failure to warn; (5) strict liability for failure to warn; (6) negligent design of products; and (7) strict liability design of products. Acoba also claimed negligent infliction of emotional distress, loss of consortium, and damages. Defendants filed cross-claims.

On February 14, 1995, Acoba served Firestone with her first request for answers to interrogatories and first request for production of documents. Specifically relevant to this appeal, interrogatory nos. 13 and 20 provided in relevant part:

13. Please state the number of lawsuits, claims, incidents or occurrences of explosions involving the RTH5 rim base *or* RIT side ring, or other component of the type

---

1. When connected to the rim base, the lock ring restrains several thousand pounds of force of compressed air in the tire. Because of the tremendous amount of pressure contained in an inflated tire, the lock ring must be in good condition to ensure a proper fit on the rim and to securely hold the tire in place. Hence, when repair is necessary, it is standard procedure upon disassembling the wheel to inspect the wheel components and replace worn, bent, or rusted lock rings.

alleged to be involved in the subject accident. For each such incident please state the following:

a. the exact component type involved in the accident;

b. the complete name and address of the plaintiff, claimant or victim and the name and address of their attorney;

c. the name and location of the Court where suit was instituted, if any;

d. the date and location of the accident and the date of notice of the occurrence to defendant;

e. a brief description of the accident, identifying the victim as a tire mounter, bystander, vehicle occupant and the activity of the victim and others, whether the accident occurred during inflation, axle mounting or demounting or similar factual descriptions, and a description of the claimed injury or damage;

f. the names, addresses and job titles of all persons who examined the rim components and of all persons who examined the multi-piece components on behalf of the Defendant and the results of said examinations, including a description of the condition and whether the dimensions were to specification;

g. the Defendant's conclusions as to the cause of the explosive separation;

h. the names, addresses and job titles of all persons who testified on behalf of Defendant, either by deposition or Court testimony stating which and the date of each such testimony;

i. as to each such accident which Defendant contends is not substantially similar to the occurrence described in Plaintiff's Complaint, state all facts upon which Defendant relies to support its contention; state the name, address and job title of all individuals with knowledge of said facts and identify by title, date, author and current custodian all documents upon which you rely to make such contention.

. . . .

20. Identify all documents by date, title, author(s), recipient(s) and current custodian which refer or relate to any inquiries, investigations, responses or other correspondence regarding the safety of multipiece rims received by or between Bridgestone/Firestone, Inc., and the following entities or employees or representatives of the following entities, in the past ten years:

a. United States Department of Transportation and all agencies therein including but not limited to the National Highway Traffic Safety Administration,

b. United States Department of Labor and all agencies therein including but not limited to the Occupational Safety and Health Administration,

c. United States Department of Commerce and all agencies therein including but not limited to the Consumer Product Safety Commission,

d. Any state government or other political subdivision within the United States and any agency or department therein,

e. Any foreign government or political subdivision therein and any agency or department therein,

f. The National Tire Dealers & Retreaders Association or any member of representative thereof,

h. The Tire & Rim Association or any member or representative thereof, and

i. Any other organization, group, company, business or individual.

With regard to these requests, Firestone responded as follows:

*RESPONSE [to No. 13]:* FIRESTONE objects to this interrogatory and all its subparts on the grounds it is overly broad, is not limited to incidents involving similar failure modes or factual circumstances, is unlimited in scope as to time, is unduly burdensome in that it seeks unnecessary and irrelevant detail and purports to require a massive search to identify such detail, seeks irrelevant information, seeks

information protected from disclosure by the attorney-client privilege, work product doctrine, and Rule 26(b)(4) of the *Hawai'i Rules of Civil Procedure* governing consulting experts, and is not reasonably calculated to lead to the discovery of admissible evidence.

Without waiver of the foregoing objections, FIRESTONE will make available its document depository to Plaintiff for Plaintiff's review of any files regarding cases and claims involving an alleged pressurized separation of components reported to FIRESTONE that occurred within the five (5) years prior to the subject occurrence and which allegedly involved the same type of products and manufacturer.

FIRESTONE additionally specifically objects to subpart (i) on the grounds it is unduly burdensome, seeks an irrelevant response, and is not reasonably calculated to lead to the discovery of admissible evidence. Under well recognized law, the burden of proving substantial similarity of other accidents for purposes of admissibility in products liability actions rests with the proponent of such evidence.

. . . .

*RESPONSE [to No. 20]:* (a)—(i) FIRESTONE objects to this interrogatory and all its subparts on the grounds it is overly broad and unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. The majority of the responsive material would be a matter of public record and thus available from the various agencies. Without waiver of the foregoing objections, subject to appropriate terms accepted by the parties, FIRESTONE will make available its depository of documents related to truck rims.

(Emphasis and capitalization in original.)

Dissatisfied with Firestone's responses, Acoba sent Firestone a letter dated April 26, 1995, requesting the basis of Firestone's refusal and inquiring as to the number of documents contained in its document depository. Firestone responded as follows in a letter dated May 11, 1995:

*Interrogatory No. 13:* Firestone will produce files regarding cases and claims involving an alleged pressurized separation of components reported to it which allegedly involved the same type of products and manufacturer as the components identified by plaintiff in this case for plaintiffs' review at Bridgestone/Firestone, Inc., 1200 Firestone Parkway, Akron, Ohio. Firestone's response erroneously refers to the document depository when referencing these files. The actual case files are not part of the document depository.

The document depository is located at the same Akron address. Firestone does not have an exact count regarding the number of documents in the depository. However, there are unquestionably many thousands of documents which are arranged in the manner they were kept by various Firestone departments pursuant to the directives of the Federal Court which presided over M.D.L. 362.

*Interrogatory No. 20:* Plaintiffs' interrogatories contain broad and undefined requests for the identification of numerous documents. If plaintiffs were to request specific documents, Firestone would be able to search for those documents. However, since plaintiffs have not done so, Firestone has offered plaintiffs the opportunity to review its documents. Firestone cannot agree to locate and identify unspecified and unidentified categories of documents.

Acoba responded on June 19, 1995, reiterating her dissatisfaction with Firestone's answers and emphasizing her desire to know the approximate number of documents contained in the document depository in order to determine whether a trip to Akron, Ohio would be necessary. Firestone responded in a letter on July 6, 1995 that it had "determined that there are a total of six responsive case and claim files. In light of Plaintiff's desire to avoid traveling to Akron and since there are a relatively small number of responsive documents, if you prefer, Firestone will produce copies of the six files at Plaintiff's expense."

On June 30, 1995, Acoba filed a motion to compel discovery against Firestone requesting additional information in response to her

**8**

interrogatories and requests for production of documents. In her motion to compel, Acoba specifically requested additional (1) answers to interrogatory nos. 13, 15, 16, 20, 21, 22, 23, 24, 25, and 26 and (2) responses to requests for production of documents nos. 5, 6, 10, and 16. She argued, as to interrogatory no. 13, that: (1) Firestone failed to answer the interrogatory; (2) it was unreasonable to expect Acoba to travel to Ohio to search through its document depository; and (3) Firestone failed to demonstrate that the request posed an undue burden. As to interrogatory no. 20, Acoba argued that: (1) the request was narrow enough for Firestone to locate the documents; (2) Firestone's offer to allow Acoba to review its document depository was inadequate because it refused to give the number of documents contained within the depository; and (3) Firestone's "tactics" were designed to frustrate discovery efforts and prevent Acoba from obtaining the necessary information.

After a hearing on the motion on July 11, 1995, the circuit court denied all requests except for interrogatory nos. 22 and 23 and production request no. 16. The circuit court denied the motion as to interrogatory no. 13 on grounds that (1) requiring Firestone to produce the names of every individual and identify related documents for every lawsuit and claim filed since the time the multi-piece rim/wheel assembly components were manufactured in 1940 and 1952 was unduly burdensome, and (2) notwithstanding, Firestone had satisfied interrogatory no. 13 by agreeing to produce files for six cases. The circuit court denied the motion as to interrogatory no. 20 on the ground that requiring Firestone to research its files for every correspondence made regarding the safety of multi-piece rims was overbroad. The circuit court indicated, however, that Acoba could conduct her own research at the document depository.

On July 19, 1995, Firestone filed a motion for summary judgment as to all of Acoba's claims. A hearing on the motion was scheduled for August 10, 1995. In her memorandum in opposition to Firestone's motion for summary judgment, Acoba attached affidavits of two mechanical engineers—Ottfried Johannes Hahn (Hahn) and Paul Younghdahl

(Younghdahl). Hahn's affidavit read as follows:

1. I am an expert in mechanical engineering. During the last twenty-five years, I have been involved in a number of incidents involving the explosive separation of rim assemblies such as the one involved in this matter. I have been qualified as an expert in this field over one-hundred times;

2. I have examined the rim base, side ring, and lock ring involved in the accident which is the subject of this action;

3. I believe that the wheel components involved in the subject accident were negligently designed because it [sic] lacked a securing device which would prevent the side/lock ring from separating from the rim base which results in an explosive separation. In addition, I believe that there are additional design defects as well;

4. I believe that the design defects caused the subject accident;

5. I believe that relative to said design defect, these components were in substantially the same condition at the time of the accident as when it was manufacturered [sic] and that these components were in servicable [sic] condition prior to said accident.

6. Based upon my experience and information received, I believe the charts and manuals created by Firestone are insufficient and do not provide adequate warning and instruction to those who mount and demount rim assemblies.

Youngdahl's affidavit stated:

1. I have a Bachelors, Masters, and Ph.D. in mechanical engineering from the University of Michigan. I have been in the professional practice of mechanical engineering for over 50 years. During the last 30 years, I have been involved in a number of incidents involving the explosive separation of rim assemblies such as the one involved in this matter;

2. I have examined the rim base, side ring, inner tube and lock ring involved in the accident which is the subject of this action;

3. I do not believe that the rim base and lock ring were worn out to such a degree as to be unserviceable.

4. I believe that whatever wear is present would be insufficient to have caused the subject accident.

Acoba alternatively requested that she be allowed to conduct additional discovery prior to the court's ruling on the summary judgment motion. Firestone filed objections to Acoba's memorandum in opposition, arguing in particular that the mechanical engineers' affidavits were inadmissible because they did not comply with HRCP Rule 56(e), insofar as they failed to show any basis for the affiants' beliefs.

On the day before the hearing, Firestone filed a reply brief, an additional affidavit, and an objection to Acoba's opposition to its motion for summary judgment. Dillingham filed an additional pleading, additional affidavits, and exhibits on the morning of the hearing. At the hearing on the motion, Acoba objected to the pleadings and affidavits. Accordingly, the circuit court took a short recess to allow Acoba's counsel to return to his office for an hour to review the new filings. Upon his return, Acoba's counsel made no objection to the admission of the documents.

On September 19, 1995, the circuit court granted Firestone's motion for summary judgment, specifying in its order that:

The affidavits of Ottfried Johannes Hahn and Paul Youngdahl submitted by the Plaintiff fail to meet the requirements of Rule 56(e) of the *Hawai'i Rules of Civil Procedure* and the case law interpreting same and fail to raise an issue of material fact which would preclude summary judgment.

Further, the Court finds that Renato Romero was an experienced tire repairman and there is no evidence of any kind to show that he was not knowledgeable of the dangers in tire repair and with regard to multi-piece rims and thus, BRIDGESTONE/FIRESTONE, INC. did not have a duty to warn him.

Further, the Court finds that Plaintiff did not provide any admissible evidence to refute Defendant's evidence that an adequate warning was given to Renato Romero. Ottfried Johannes Hahn's affidavit indicates that Mr. Hahn is a mechanical engineer but does not provide a basis for any expertise with regard to warnings.

Further, the Court finds that the OSHA regulations cited by BRIDGESTONE/FIRESTONE, INC. were in effect at the time of Mr. Romero's accident and that the warnings provided by BRIDGESTONE/FIRESTONE, INC. to Romero's employer were provided by that employer to Mr. Romero, who was aware of these warnings and as stated above, BRIDGESTONE/FIRESTONE, INC. had no duty to warn Romero and/or it satisfied any such duty to warn.

Acoba timely appealed.

## II. STANDARDS OF REVIEW

### A. Discovery

 The extent to which discovery is permitted under HRCP Rule 26 (1990) is subject to considerable latitude and discretion of the trial court. The exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party. *Wakabayashi v. Hertz Corp.*, 66 Haw. 265, 275, 660 P.2d 1309, 1316 (1983). The trial court abuses its discretion whenever it exceeds bounds of reason or disregards rules or principles of law or practice to the substantial detriment of the party. *Ho v. Leftwich*, 88 Hawai'i 251, 256, 965 P.2d 793, 798 (1998).

### B. Motion for Continuance Under HRCP Rule 56(f)

 A trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) (1990) will not be reversed absent an abuse of discretion. *Josue v. Isuzu Motors America, Inc.*, 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (citation omitted). "Additionally, the 'request must demonstrate how postponement of a ruling on the motion will enable him [or her], by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact.'" *Id.*

(quoting *Wilder v. Tanouye*, 7 Haw.App. 247, 253, 753 P.2d 816, 821 (1988)).

### C. *Summary Judgment*

We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citations and internal quotations omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716, (1982) (citations omitted).

*Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy*, 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)) (brackets omitted). We have also held that when making a summary judgment determination, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue*, 86 Hawai'i at 80, 947 P.2d at 948 (quoting *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)) (brackets omitted).

*Buck v. Miles*, 89 Hawai'i 244, 248, 971 P.2d 717, 721 (1999).

**2.** HRAP Rule 28 provides in relevant part:

(b) **Opening Brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

### III. *DISCUSSION*

**A.** *The circuit court did not err in denying Acoba's motion to compel answers to interrogatories 13 and 20.*

Acoba first contends that, because Firestone failed to demonstrate that her discovery requests were unduly burdensome under HRCP Rule 26 (1990), the circuit court erred in failing to grant in full her motion to compel discovery from Firestone. On appeal, however, she submits argument addressing only the circuit court's ruling as to interrogatory nos. 13 and 20.

■ It is well settled that "[a] general assignment of error which does not 'set out separately the particulars of each error intended to be urged,' is insufficient and does not call for consideration by this court." *Lyon v. Bush*, 49 Haw. 116, 118, 412 P.2d 662, 664 (1966) (citations omitted). To this end, Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (1998) [2] requires an appellant's opening brief to set forth "[t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon." (Citation omitted.)

■ Here, Acoba argues generally that the circuit court erred in failing to compel all of her discovery requests. Apart from interrogatory nos. 13 and 20, Acoba neither sets out separately the particulars of each error nor states any reasons for any alleged errors. Thus, Acoba failed to comply with HRAP Rule 28(b)(7) with respect to any remaining alleged errors in the circuit court's ruling on her motion to compel. Accordingly, we review only her claims as to interrogatories nos. 13 and 20. *See Weinberg v. Mauch*, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995) (declining to review claim where party failed to present argument as to why the trial court erred by granting summary judgment motion), *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995).

(7) *The argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon.* The argument may be preceded by a concise summary.

(Emphasis added.)

Under HRCP Rule 26(b), a party may obtain discovery of any matter which is relevant and not privileged, subject to limitation by the trial court. In this regard, HRCP Rule 26(b)(1) provides in pertinent part as follows:

(b) **Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) . . . Subject to the specific limitation on interrogatories contained in Rule 30(b) of the Rules of the Circuit Courts, the *frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that:* (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) *the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.*

(Emphases added.) HRCP Rule 26(b)(1)(iii) thus expressly authorizes the circuit court to limit the amount of discovery on a case-by-case basis even in the absence of sanctionable abuse.

In this case, the scope of Acoba's discovery request is wide-reaching. Interrogatory no. 13 requests information regarding every "lawsuit[ ], claim[ ], incident[ ] or occurrence[ ] involving the RTH5 rim base or RIT side ring." (Emphasis omitted.) Interrogatory no. 20 requests identification of documents relating to all "inquiries, investigations, responses or other correspondence regarding the safety of multi-rim rims." Although Acoba has demonstrated that the requested material may have relevance, the relevancy is outweighed by the burden placed on Firestone. Indeed, the burden would be great to require Firestone to produce the names of every individual and every related document for every lawsuit and claim filed, as well as every correspondence made

regarding the safety of multi-piece rims. We therefore perceive no abuse of discretion in the circuit court's determination that interrogatory nos. 13 and 20 were unduly burdensome and overbroad.

Furthermore, in response to Acoba's discovery requests, Firestone agreed to permit her to review its files regarding "cases and claims involving an alleged pressurized separation of components reported to Firestone that occurred with the five (5) years prior to the subject occurrence and which allegedly involved the same type of products and manufacturer." It also agreed to produce copies of six responsive case and claim files at Acoba's expense. Although Acoba did not receive all the discovery she desired, it appears that Firestone reasonably responded to her discovery requests. We hold, therefore, that the circuit court did not abuse its discretion in denying Acoba's motion to compel regarding interrogatory nos. 13 and 20 pursuant to HRCP Rule 26(b)(1)(iii).

B. *The circuit court did not err in refusing to permit Acoba additional time to complete discovery.*

Acoba next asserts that the circuit court erroneously denied her request for additional time to complete discovery. In this regard, HRCP Rule 56(f) provides:

(f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Emphasis added.) *See also Wilder,* 7 Haw. App. at 253, 753 P.2d at 820 ("the court may refuse to grant summary judgment if the party opposing the motion submits affidavits setting forth the reasons why he cannot present by affidavit facts essential to justify his opposition. If the stated reasons are deemed sufficient, the court may grant a continuance of the motion to permit affidavits to be obtained, depositions to be taken, or other discovery to be had") (citing 10A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 2740 (1983)); *Josue,* 87 Hawai'i at 416, 958 P.2d at 538 (party opposing motion for summary judgment must demonstrate how postponement of a ruling on the motion would enable it, by discovery or other means, to rebut the movant's showing of absence of a genuine issue of fact).

In her memorandum in opposition to summary judgment, Acoba requested that she be allowed to "conduct reasonable discovery prior to the [c]ourt ruling on [defendant's summary judgment] motion." She also submitted an affidavit of counsel stating generally that she "required additional time to conduct discovery."

Acoba's request for relief under HRCP Rule 56(f) is inadequate to warrant a continuance of a ruling on the summary judgment motion. First, Acoba failed to provide reasons why she could not "present by affidavit facts essential to justify her opposition." Moreover, she neglected to demonstrate how postponement of a ruling on the motion would enable her, by discovery or other means, to rebut Firestone's showing of absence of a genuine issue of fact. *See Josue,* 87 Hawai'i at 416, 958 P.2d at 538. Instead, she requested generally that she be given more time to complete discovery. As such, Acoba failed to make an adequate request for a continuance for the purpose of completion of discovery. Accordingly, the circuit court did not err in denying Acoba's requests for additional time to complete discovery under HRCP Rule 56(f).

C. *The circuit court did not err in permitting Firestone and Dillingham to file documents the day before and morning of the summary judgment hearing.*

Acoba next asserts that the court erred in allowing Firestone and Dillingham to file reply briefs, additional affidavits, exhibits, and objections to Acoba's opposition to summary judgment the day before and the morning of the hearing. Acoba specifically argues that, because she was not given the opportunity to produce evidence contrary to the new submissions, she was effectively foreclosed from opposing the motions for summary judgment. We disagree.

HRCP Rule 56(c) (1990) provides in relevant part that "[t]he motion shall be served at least 10 days before the time fixed for the hearing. *The adverse party prior to the day of hearing may serve opposing affidavits.*" (Emphasis added.) The rule's provisions do not address or limit the period in which a reply brief may be filed. Nor does the rule address the time period in which the movant may file opposing affidavits. Acoba maintains that HRCP Rule 56 allows only the adverse party, not the movant, to file opposing affidavits the day before the hearing. Firestone argues, on the other hand, that (1) the rule does not prohibit the movant from filing its affidavits immediately prior to the hearing, and (2) although Acoba objected to Dillingham's pleading and affidavits filed on the morning of the hearing, she participated in the hearing without objection to Firestone's documents filed the previous day. We agree with Firestone.

■ Our view of the record indicates that Acoba objected to the documents and affidavits filed by Dillingham the morning of the hearing, but did not object to Firestone's reply brief and additional affidavits filed the previous day. Accordingly, Acoba is precluded from challenging the admission of Firestone's pleadings and affidavits on appeal. *See Pele Defense Fund v. Paty,* 73 Haw. 578, 837 P.2d 1247 (1992) (an issue not raised and properly preserved in trial court will not be considered on appeal), *certiorari denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993).

■ The transcript further reveals that Acoba's claim against Dillingham is waived as well. At the hearing, Acoba's counsel urged the circuit court to disregard Dillingham's supplemental affidavits and exhibits submitted that morning because he did not have an opportunity to review them. The circuit court took notice of that fact and asked counsel how much time he needed to review the materials. In response, Acoba's counsel conceded that "the rule does permit submission of affidavits up until the time of the hearing" and explained that "if the

Court's inclined to give me more time, I suppose that could cure it, as well." Accordingly, the circuit court allowed counsel approximately one hour to return to his office to review the materials. When counsel returned to court, the documents were admitted without objection.

As a result of the foregoing, any objection to Dillingham's late filings was cured when Acoba's counsel: (1) agreed that one hour's time would be sufficient for him to review the documents; (2) reviewed the documents within that time; and (3) made no objections to their admission. *See e.g., Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 75 Haw. 480, 496, 866 P.2d 951, 960 (1994) ("by accepting the benefit of or acquiescing in a judgment or order, or by otherwise taking a position inconsistent with the right of appeal therefrom, a party is deemed to have impliedly waived his or her right to have such judgment or order reviewed by an appellate court") (citations omitted), *reconsideration denied,* 76 Hawai'i 247, 75 Haw. 580, 871 P.2d 795 (1994); *Lussier v. Mau–Van Dev. Inc.,* 4 Haw.App. 359, 366–67, 667 P.2d 804, 812 (1983) (in failing to object, actively participating in oral argument, failing to file a counter-affidavit, and failing to show any harm due to lack of notice, plaintiff waived his right to HRCP Rule 56(c)'s notice requirement). Because Acoba acquiesced in the court's order and made no specific allegation of prejudice before the circuit court, she cannot now raise the order as error on appeal. Accordingly, the circuit court properly admitted both Firestone's and Dillingham's pleadings and affidavits.

**3.** Acoba does not challenge the circuit court's grant of summary judgment in favor of Firestone on the issue of breach of warranty. Accordingly, we do not address this issue.

**4.** HRCP Rule 56(e) provides in relevant part:
(e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by

### D. *Firestone's Motion for Summary Judgment*

Acoba next contends that the circuit court erred in granting summary judgment for Firestone because: (1) the affidavits of the mechanical engineers—Hahn and Youngdahl—complied with HRCP Rule 56(e) and therefore should not have been disregarded by the court; and (2) there were genuine issues of material fact as to Firestone's failure to warn, strict liability, and negligence for defective design.[3] We consider each argument in turn.

### 1. *The circuit court erred in excluding Hahn's affidavit for failure to comply with HRCP Rule 56(e).*

Acoba argues that the circuit court erred in ruling that the affidavits of Hahn and Youngdahl failed to meet the requirements of HRCP Rule 56(e).[4] With regard to Hahn's affidavit, we agree.[5]

At the hearing on Firestone's motion for summary judgment, Firestone contended and the circuit court ruled that, because Hahn's and Youngdahl's opinions were not supported by specific facts, both affidavits failed to comply with HRCP Rule 56(e) and were insufficient to raise genuine issues of material fact. Firestone now contends that, because the affidavits fail to meet the criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),[6] the circuit court correctly concluded that they did not comply with HRCP Rule 56(e).

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**5.** Because we hold that Hahn's affidavit is sufficient to raise a genuine issue of material fact to defeat summary judgment, we need not reach the issue of whether Youngdahl's affidavit is likewise sufficient.

**6.** To date, this court has neither expressly approved nor rejected the *Daubert* criteria. We decline to do so at this time.

■ Under HRCP Rule 56(e), "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein." (Citation omitted.) Moreover, materials submitted in opposition to summary judgment "must set forth specific facts showing that there is a genuine issue for trial." HRCP Rule 56(e). Although Hawai'i Rules of Evidence (HRE) Rule 705 permits an expert to testify by opinion or inference "without disclosing the underlying facts or data if the underlying facts or data have been disclosed in discovery proceedings[,]" affidavits containing expert opinions, like other materials submitted in opposition summary judgment, must comply with HRCP Rule 56(e) and set forth specific facts showing that there is a genuine issue for trial. *See M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital, Inc.*, 981 F.2d 160, 165 (4th Cir.1992) (Federal Rule of Evidence 705 does not alter the requirement of FRCP Rule 56(e) that affidavits submitted in summary judgment proceedings set forth specific facts); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) (Federal Rules of Evidence Rules 703 and 705 do not alter the requirement of FRCP Rule 56(e) that "an affidavit must set forth specific facts in order to have any probative value."); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir.1993) (Expert evidence must meet the standards of FRCP Rule 56(e) and set forth specific facts. "Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues."); *Ferguson v. District of Columbia*, 629 A.2d 15, 20 (D.C.App.1993) (FRCP Rule 56(e) "applies equally to affidavits submitted by experts.") (Citation omitted.) *See also Mid–State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir.1989); *Ambrosini v. Labarraque*, 966 F.2d 1464, 1470 (D.C.Cir. 1992); *Monks v. General Electric Co.*, 919 F.2d 1189, 1192–93 (6th Cir.1990); *Bieghler v. Kleppe*, 633 F.2d 531, 533–34 (9th Cir. 1990).

In analogous cases, other courts have reversed summary judgments based on the exclusion of experts' affidavits because of the mistaken conclusion that they failed to contain specific facts. *See Ambrosini*, 966 F.2d at 1470 (in products liability action against drug manufacturer, doctor's affidavit opining that, "based on 'the available scientific and epidemiological data concerning progestin and progesterone agents including the product manufactured by the defendant Upjohn Company known as Depo–Provera,' as well as a review of relevant medical records of Mrs. Ambrosini and her daughter Teresa, Depo–Provera caused Teresa Ambrosini's birth defects" provided a sufficient factual basis to defeat summary judgment); *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316–18 (9th Cir.1985) (in products liability action alleging injuries caused by plaintiff's mother's injection of diethylstilbestrol (DES) during her pregnancy, two doctors' affidavits submitted by plaintiff in opposition to defendant's motion for summary judgment stating that doctors based their opinions on "changes they observed in the tissue of her vagina" contained sufficient factual support to raise a genuine issue of material fact within the meaning of FRCP Rule 56(e)); *Bieghler*, 633 F.2d at 532–534 (accident reconstruction expert's affidavit stating that he had discussed the accident with plaintiffs, visited the accident site, examined photographs of the scene and of the motorcycles involved, examined the motorcycle at issue and parts of the others, and reviewed reports on the incident, and opined that the accident was caused by defective lighting in the tunnel where the accident took place, was sufficient to defeat a motion for summary judgment); *M & M Medical Supplies*, 981 F.2d at 164 (in monopoly case, doctor's affidavit reciting that he reviewed the relevant data, interviewed personnel, visited the companies relevant to the case, and made price comparisons satisfied FRCP Rule 56(e) because it stated facts upon which the expert based his opinion).

■ As in the foregoing cases, Hahn's affidavit contains a sufficient factual basis for Hahn's expert opinions consistent with HRCP Rule 56(e). In his affidavit, Hahn explained which items he reviewed, stated his

expertise in the area, and recited the general factual bases for his opinions. Hahn stated specifically that, after examining the subject rim assembly, he believed "that the wheel components involved in the subject accident were negligently designed *because it [sic] lacked a securing device which would prevent the side/lock ring from separating from the rim base* which results in an explosive separation." In other words, Hahn stated that he based his opinion that the wheel components were improperly designed on his observation that the subject rim assembly lacked a securing device.

In addition, Hahn's affidavit averred that he was familiar with the same basic wheel assembly design as in the instant matter. Indeed, at the time Hahn examined the subject rim assembly, he already had been involved in "a number of incidents involving the explosive separation of rim assemblies such as the one involved in this matter [and had been] qualified as an expert in this field over one-hundred times." Therefore, Hahn was able to render a competent assessment regarding a possible design defect in the rim assembly for purposes of summary judgment.

We are persuaded that Hahn's affidavit provided a sufficient factual basis to defeat Firestone's motion for summary judgment. That being the case, we need not decide whether Youngdahl's affidavit is likewise sufficient to defeat summary judgment in this case. Accordingly, we reverse the circuit court's ruling that Hahn's affidavit was insufficient to raise a genuine issue of material fact for purposes of HRCP Rule 56(e).

2. *The circuit court did not err in granting summary judgment on the issue of Firestone's failure to warn.*

Acoba next maintains that the circuit court erred in ruling that Firestone had no duty to warn Romero of the dangers of multi-piece rim assemblies. Assuming *arguendo* that Firestone had the duty to warn Romero, we hold that, as a matter of law, Firestone discharged any duty it may have had.

In this jurisdiction, a manufacturer has a two-fold duty to provide (1) adequate instructions for safe use of the product; and (2) warnings as to the dangers inherent in improper use of the product. *Ontai v. Straub Clinic and Hospital, Inc.,* 66 Haw. 237, 248, 659 P.2d 734, 743 (1983); *cf. Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 370, 944 P.2d 1279, 1313 (1997). When a product warning has been provided by a manufacturer, the adequacy of that warning is generally a question of fact for the jury. 63A Am. Jur.2d *Products Liability* § 1219 (1997) (citing *Town of Bridport v. Sterling Clark Lurton Corp.,* 166 Vt. 304, 693 A.2d 701 (1997); *Bryant v. Technical Research Company,* 654 F.2d 1337, 1345 (9th Cir.1981) (adequacy of a warning under products liability is a question of fact to be left to the jury). *See also Wagatsuma v. Patch,* 10 Haw.App. 547, 574, 879 P.2d 572, 587 (1994) ("[t]he issue of breach of duty is common to both negligence and strict products liability claims and is ordinarily one for the jury."), *certiorari denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994); *Bidar v. Amfac, Inc.,* 66 Haw. 547, 552, 669 P.2d 154, 159 (1983) ("[w]hether the obligation to exercise reasonable care was breached is ordinarily a question for the trier of fact to determine."). In rare instances, however, warnings may be found adequate as a matter of law. 63A Am.Jur. *Products Liability* § 1219 (1997); *Temple v. Velcro USA, Inc.,* 148 Cal.App.3d 1090, 1095, 196 Cal. Rptr. 531, 533 (1983).

In this case, assuming *arguendo* that Firestone had a duty to warn Romero, the undisputed facts show that it carried its burden of producing evidence of the absence of breach. In its motion for summary judgment, Firestone submitted a copy of its 52–page safety and service manual sent to Ken's Tire in 1987. The manual contains specific information instructing and warning tire servicepeople to discard deteriorated, rusty, cracked or distorted rim components. It warns that use of "bent flanges, sprung side/lock rings, out of round/out or flat rings/rims and deep tool marks can prevent components from properly seating [and may] lead to explosive separation during inflation." It also cautions that "[a]ssembling damaged parts is extremely dangerous. The parts can fail during inflation or in later vehicle use. You, or someone else, could have a serious or fatal

injury." The manual also provides pictures and examples of different types of damaged, rusted, cracked, eroded, sprung, and bent rings and rims and specifically warns of the risks of failing to use proper safety equipment. It also states prominently on its cover that federal OSHA regulations "require all employers to make sure their employees who service wheels/rims understand the safety information contained in this manual." Firestone's manual thus clearly and explicitly warned Ken's Tire of the risk that "[a] build-up of rust and/or corrosion can prevent the side/lock rings from properly seating [and may] cause an explosive separation during inflation." [7]

Firestone further met its burden through its submission of deposition testimonies of Edward Shimabuku, a Ken's Tire supervisor, and Blake Higashi, a former general manager of Ken's Tire, stating that Ken's Tire had received the Firestone manual and that instructional charts were mounted on the repair shop's walls. Higashi also testified that Ken's Tire regularly held safety meetings for its employees during which Romero and other employees were instructed about proper safety and maintenance procedures for use of multi-piece tire rims.

The burden of proof then shifted to Acoba to come forward with specific facts in admissible form sufficient to require a trial. *See* HRCP Rule 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.*") (Citation

omitted and emphasis added.). Acoba failed to do so.

Acoba's evidence on the issue of Firestone's breach of its duty to warn consists solely of one conclusory statement in Hahn's affidavit. Hahn stated that he "believe[d] the charts and manuals created by Firestone are insufficient and do not provide adequate warning and instruction to those who mount and demount rim assemblies." Hahn's broad, unsupported conclusion is insufficient to raise a genuine issue of material fact. Therefore, while we are mindful of the fact that the adequacy of a warning is usually a question of fact for the jury, because Acoba failed to carry her burden of setting forth specific facts to refute the adequacy of Firestone's warnings, the circuit court did not err in granting summary judgment in favor of Firestone regarding its failure to warn.[8]

3. *The circuit court erred in granting summary judgment on the issue of Firestone's strict product liability for defective design.*

Acoba argues that the circuit court erred in granting Firestone's motion for summary judgment on the issue of Firestone's strict liability for defective design of the subject tire rim assembly. We agree.

To establish a prima facie claim for strict product liability, the plaintiff has the burden "to prove (1) a defect in the product which rendered it unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and [the] plaintiff's injuries." *Tabieros*, 85 Hawai'i at 354, 944 P.2d at 1297 (quoting *Wagatsuma*, 10 Haw.App.

---

7. The Firestone manual also provided, *inter alia,* the following warnings:

"Do not add air to tire and rim assemblies that have been operated in a seriously underinflated or flat condition. The rim components can explode causing serious or fatal injuries."

. . . .

"Cracks in metal surfaces can cause a component failure during inflation or later vehicle use. Do not assemble parts with cracks in metal surfaces. Destroy cracked parts."

. . . .

"Failure to follow [the] safety procedures can lead to serious, perhaps fatal, accidents."

8. Acoba argues that the warning provided to Ken's Tire was insufficient to constitute a warning to Romero. To the contrary, it was reasonable for Firestone to rely upon Ken's Tire to advise Romero of the dangers of multi-piece rim assemblies. In fact, Ken's Tire was required by federal OSHA guidelines to train its employees regarding the safety procedures of servicing wheels and rims. We decline to impose an additional duty upon a manufacturer to warn each and every individual employee of the possible dangers of the explosive separation of multi-piece tire rims. The pertinent issue, therefore, is whether Firestone adequately warned *Ken's Tire.*

at 566, 879 P.2d at 583–84 (citing *Ontai*, 66 Haw. at 243, 659 P.2d at 740)). Proof of defect and causation may be provided by expert testimony or by circumstantial evidence. *Wagatsuma*, 10 Haw.App. at 566, 879 P.2d at 584. A plaintiff may establish a defect for purposes of either strict liability or negligence under three approaches: (1) the "consumer expectation" test; (2) the "risk-utility" test; and (3) the "latent danger" test. *Tabieros*, 85 Hawai'i at 367, 944 P.2d at 1310. Generally, whether a product is unreasonably dangerous is a question for the trier of fact. *See Thomas v. Newton Int'l. Enterprises*, 42 F.3d 1266, 1269 (9th Cir.1994).

In its motion for summary judgment, Firestone argued (1) that the wheel components were not in substantially the same condition as when they left the control of Firestone and (2) that Acoba could not prove that a defect in the wheel components caused the accident. Firestone contended instead that Romero's own conduct in re-using the lock ring was the sole proximate cause of the explosion. In support of its motion, Firestone submitted an affidavit of its expert, opining that the rim and lock ring were rusted, corroded, deteriorated, and should not have been used. It also submitted the deposition testimony of two employees who stated that the subject lock ring was rusted, worn, deteriorated, and "out of round."

Although Firestone met its initial burden, Acoba raised triable issues of fact as to whether the lack of a safety mechanism constituted a design defect and whether the alleged defect was a substantial factor in causing Romero's injury. Hahn, Acoba's expert, opined that "the wheel com-

ponents involved in the subject accident were negligently designed because it [sic] lacked a securing device which would prevent the side/lock ring from separating from the rim base which results in an explosive separation." Hahn's expert opinion regarding the rim assembly design constituted sufficient evidence to raise a genuine issue of material fact as to whether the rim assembly was defectively designed and whether that design was the legal cause of Romero's death.

Reasonable jurors, viewing all the evidence, could conclude either that the design of the rim assembly was the cause of Romero's death or that Romero's own negligence, if any, was the sole legal cause of his death.[9] The conflicting material facts on the element of causation thus do not support a summary judgment ruling. As such, the circuit court erred in granting summary judgment in favor of Firestone on the issue of Firestone's strict liability for defective design.[10]

E. *The circuit court did not err in granting summary judgment as to General Tire's and Countrywide's Failure to Warn.*

Acoba next contends that genuine issues of material fact exist as to whether General Tire, the tire manufacturer, and Countrywide, the inner tube manufacturer, negligently failed to warn Romero of the dangers of explosive separation of the tire rim and lock ring. We hold, as a matter of law, that General Tire and Countrywide did not have a duty to warn Romero of any inherent dangers in Firestone's rim assembly.

9. It is true that any misuse of the rim assembly or fault by Romero could reduce his recovery. However, whether he misused the product so as to become an intervening, superseding legal cause of the resulting loss is a question of fact for the jury.

10. Under the same analysis, a genuine issue of material fact exists as to whether the subject tire rim assembly was negligently designed by Firestone. *See Tabieros*, 85 Hawai'i at 354, 944 P.2d at 1297 ("[u]nder Hawai'i law, 'plaintiffs in design defect cases may proceed on both a theory of negligence for negligent design and a theory of strict liability in tort for defective design[ ]' and

under either theory, it is '[t]he legal duty of manufacturers . . . to exercise reasonable care in the design and incorporation of safety features to protect against foreseeable dangers[.]' " (quoting *Ontai*, 66 Haw. at 247, 659 P.2d at 742 (citations omitted); *Dorman v. Bridgestone/Firestone*, 992 S.W.2d 231, 239 (Mo.App.1999) ("[s]trict liability and negligence, although distinct legal theories, may rely on the same operative facts to support recovery."). Accordingly, we hold that the circuit court erred in granting summary judgment in favor of Firestone on the issue of its negligent design of the tire rim and lock ring.

In *Ontai*, 66 Haw. at 248, 659 P.2d at 743, this court observed that "a manufacturer must give appropriate warning of any known dangers which the user of its product would not ordinarily discover." (Citation omitted.) Implicit in this statement is the principle that a manufacturer owes a duty to warn regarding its *own product*, not regarding products it did not produce, sell, or control. *See, e.g., Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 582 N.Y.S.2d 373, 591 N.E.2d 222, 226 (1992) (manufacturer of tire had no duty to warn of dangers of multi-piece rim assembly manufactured by Firestone and Kelsey–Hayes where the tire manufacturer "did not contribute to the alleged defect in [the rim assembly], had no control over it, and did not produce it"); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 472 (11th Cir.1993) (manufacturer of tire had no duty to warn of dangers in exploding rim assembly manufactured by another because "[t]he manufacturer of a non-defective component tire cannot be held liable for injuries caused by a product it did not manufacture, sell, or otherwise place in the stream of commerce.").

Under the circumstances of this case, we decline to impose upon General Tire and Countrywide a duty to warn of the dangers of Firestone's rim and lock ring simply because the tire and inner tube are compatible for use with Firestone's product. General Tire and Countrywide did not produce, sell, or have control over the production of the subject rim assembly. Moreover, Acoba submitted no evidence to show that the tire or the inner tube failed during the accident or created the alleged defect in the rim assembly that caused it to explode. We therefore hold that General Tire and Countrywide did not have a duty to warn of the dangers of using Firestone's multi-piece rim assembly where neither General Tire nor Countrywide "contribute[d] to the alleged defect in [the rim assembly], had no control over it, and did not produce it." Accordingly, the circuit court did not err in granting summary judgment in favor of General Tire and Countrywide.

F. *The circuit court did not err in granting summary judgment regarding Dillingham's liability.*

With regard to Dillingham, the owner of the road grader, Acoba appears to argue that genuine issue of material fact exist under three theories of liability. In conclusory fashion, Acoba contends that (1) Dillingham is liable for Romero's injuries because it had control over the grader at the time of the accident; (2) Dillingham had a duty to warn Romero of the allegedly defective rim and lock ring; and (3) Dillingham was "negligent in supplying the lock ring and rim base." All three allegations lack merit.

Acoba's strict liability claim clearly fails. Dillingham was not a seller or lessor engaged in the business of selling or leasing the tire rim assembly; it did not introduce the harmful product into the stream of commerce. In fact, Dillingham was itself a user and consumer of the Firestone wheel components. As such, Dillingham cannot be held strictly liable for Romero's death.

For similar reasons, Dillingham was not under a duty to warn Romero of the dangers of using a multi-piece rim assembly. As the owner of the road grader, Dillingham did not manufacture, sell, or otherwise place in the stream of commerce the subject rim assembly. Accordingly, Dillingham was not under a duty to warn Romero of possible dangers associated with the wheel assembly.

Finally, Acoba's negligence claim is unpersuasive. Acoba did not contend that Dillingham was liable for negligent inspection of the wheel assembly. She argued instead that Dillingham negligently "supplied" the lock ring. Dillingham would be under a duty to prevent Romero's injury only if it had reason to know that its wheel assembly was defective and that this characteristic created a foreseeable risk of harm. *See generally Seibel v. City and County of Honolulu*, 61 Haw. 253, 257, 602 P.2d 532, 536 (1979) ("An actionable duty is generally owed to foreseeable plaintiffs subjected to an unreasonable risk of harm created by the actor's negligent conduct." (Citing *Ajirogi v. State*, 59 Haw. 515, 583 P.2d 980 (1978).))

Acoba again failed to carry her burden of setting forth specific facts to raise a genuine issue of material fact for trial. She submitted the deposition testimony of one of Dillingham's employees, stating that he performed routine inspections of the road grader including the tires, wheels, and rims. However, there was no evidence on the basis of which a jury could conclude that Dillingham knew or had reason to know of the dangerous condition of the rim assembly and that the condition created a foreseeable risk of harm to Romero. We therefore hold that Acoba failed to establish a genuine issue of material fact as to whether Dillingham was negligent for failure to discharge its duty of ordinary care or as to whether Dillingham had either actual or constructive notice of the possible danger of the lock ring exploding. Accordingly, the circuit court did not err in granting summary judgment in favor of Dillingham.

## IV. CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err in: (1) denying Acoba's motion to compel answers to interrogatories 13 and 20; (2) permitting Firestone and Dillingham to file documents the day before and the morning of the summary judgment hearing; (3) refusing to permit Acoba additional time to complete discovery; (4) granting summary judgment in favor of Firestone on the issue of its failure to warn; (5) granting summary judgment in favor of General Tire and Countrywide regarding their failure to warn; (6) granting summary judgment in favor of Dillingham; and (7) denying Acoba's motion for reconsideration. However, we hold that the circuit court erred in: (1) ruling that the affidavits submitted by Acoba did not comply with HRCP Rule 56(e); and (2) granting summary judgment in favor of Firestone on the issues of Firestone's (a) strict liability for defective design and (b) negligence for defective design. Accordingly, we vacate the circuit court's order granting summary judgment on the issues of Firestone's strict liability and negligent design and remand for further proceedings consis-

tent with this opinion. In all other respects, we affirm.