56 P.3d 748

ASSOCIATES FINANCIAL SERVICES COMPANY OF HAWAII, INC., a Hawaii Corporation, Plaintiff/Counterclaim Defendant–Appellee,

v.

Arnold RICHARDSON, Defendant/Counterclaimant–Appellant,

and

Bank of Hawaii, City and County of Honolulu, Defendants– Appellees,

and

John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10, Doe Corporations 1– 10; Doe Entities 1–10; and Doe Governmental Units 1–10, Defendants.

No. 22595.

Intermediate Court of Appeals of Hawaiʻi.

Sept. 5, 2002.

Gary Victor Dubin, Honolulu, on the briefs, for Defendant–Appellant Arnold Richardson.

Steven T. Iwamura and Mary Martin, Honolulu, on the briefs, for Plaintiff–Appellee Associates Financial Services Company of Hawaii, Inc.

Walter Beh, II, Honolulu, on the briefs, for Defendant–Appellee Bank of Hawaii.

Winston, K.Q. Wong, Honolulu, Deputy Corporation Counsel, on the briefs, for Defendant–Appellee City and County of Honolulu.

BURNS, C.J., and FOLEY, J.; and LIM, J., dissenting.

*Opinion of the Court by FOLEY, J.*

Defendant–Appellant Arnold Richardson (Richardson) appeals from the following:

1. "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure as Against All Defendants on Complaint Filed April 6, 1998," filed November 24, 1998 (FoF/CoL/Order);

2. "Judgment Based on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure as Against All Defendants on Complaint Filed April 6, 1998," filed November 24, 1998 (Judgment); and

3. "Order Denying Defendant Richardson's Motion, filed December 4, 1998, for Reconsideration of (1) 'Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed April 6, 1998' and (2) Rule 54(b) 'Judgment', Both Filed November 24, 1998," filed on May 14, 1999 (Order Denying Motion for Reconsideration).

The FoF/CoL/Order, Judgment, and Order Denying Motion for Reconsideration were entered by the Honorable Gail Nakatani in the Circuit Court of the First Circuit (circuit court). The Judgment stated that summary judgment, decree of foreclosure, and the order of sale were entered as final judgments in favor of Plaintiff–Appellee Associates Financial Services Company of Hawaii, Inc., a Hawaii corporation (Associates), and against Richardson and Defendants–Appellees Bank of Hawaii (Bank) and City and County of Honolulu (City and County).

We affirm Findings of Fact 1 through 12 and 14 and Conclusion of Law 1 of the FoF/CoL/Order, vacate the remainder of the FoF/CoL/Order, vacate the November 24, 1998 Judgment, and remand this case to the circuit court for further proceedings consistent with this opinion.

**I.**

**BACKGROUND**

On April 6, 1998, Associates filed a complaint for foreclosure against Richardson, Bank, City and County, and a number of Doe Defendants. The complaint alleged that on or about June 10, 1996, Richardson, for value received, made, executed and delivered to Associates a Loan Agreement dated June 10, 1996 in the principal amount of Two Hundred Eighty–Eight Thousand One Hundred Two and 15/100 Dollars ($288,102.15) in favor of Associates (hereinafter referred to as "Loan Agreement" or "Note"). The Loan Agreement was secured by that certain real estate mortgage dated June 10, 1996 (Mortgage) executed by Richardson, as mortgagor, in favor of Associates, as mortgagee. The Mortgage was recorded on June 12, 1996 in the Bureau of Conveyances, State of Hawai'i, as Document No. 96–082062. The real property securing the Loan Agreement and Mortgage was located at 54–131 Hauula Homestead Road, Honolulu, Hawai'i 96717, TMK 1/5–4–8–12 (Property).

The complaint also alleged that Associates was the owner of the Loan Agreement and Mortgage. Associates' Mortgage was junior and subordinate to interest of City and County and to the mortgage of Bank, but was

otherwise prior and superior to all other claims and interests to the Property.

Associates further alleged that Richardson had defaulted in the observance and performance of the terms, covenants, and conditions set forth in the Mortgage and in the observance and performance of the terms and conditions of the Loan Agreement in that Richardson failed and neglected to pay the principal sum and the interest at the times and in the manner provided and further failed and neglected to pay the additional Mortgage expenses, advances, and charges incurred or made pursuant to the terms and conditions of the Mortgage. By reason of this breach, Associates exercised its option under the terms and covenants of the Loan Agreement and Mortgage to declare the entire principal balance under the Loan Agreement and Mortgage, together with interest, immediately due and payable. Due notice was given to Richardson of Associate's exercise of its option. Associates claimed that as of the date of the filing of the complaint, Richardson owed the following amounts:

| | |
|---|---|
| Principal | $281,843.43 |
| Interest (to 1/15/98) | 10,020.39 |
| Litigation Guarantee | 200.00 |
| TOTAL DUE | $292,063.82 |

plus per diem interest accrual for each day after January 15, 1998 until paid ($109.50 per diem at 12.99% per year, as of April 6, 1998). Associates also claimed that by reason of the above facts, it was entitled to foreclosure on the Mortgage and sale of the Property.

Attached as exhibits to Associates' complaint were the purported Loan Agreement and Mortgage between Associates and Richardson.

Richardson filed his answer to Associates' complaint on May 8, 1998. He admitted his residency and that he was the fee simple owner of the Property and denied the remaining allegations, stating he was "without sufficient knowledge or information so as to form a definite opinion as to the accuracy" of the allegations. Richardson raised affirmative defenses of "nondisclosure and misrepresentation" by Associates "in relation to the subject transaction" and "the defense of unfair and deceptive business practices."

On May 26, 1998, Associates filed a "Motion for Summary Judgment and Decree of Foreclosure as Against All Defendants on Complaint Filed April 6, 1998" (Motion for Summary Judgment) against Richardson and the other named defendants. In support of the Motion for Summary Judgment was an affidavit of Damon Stanford (Stanford) that stated, in pertinent part, the following:

1. Stanford had personal knowledge of and was competent to testify to the matters stated in the affidavit by virtue of his position as Senior Assistant Manager of Associates and his review of the records and files relating to Richardson's mortgage loan.

2. Richardson owned the fee simple interest in the Property, which was the subject of the foreclosure.

3. On or about June 10, 1996, Richardson, for value received, made, executed and delivered to Associates the Loan Agreement dated June 10, 1996, in the principal amount of Two Hundred Eighty–Eight Thousand One Hundred Two and 15/100 Dollars ($288,102.15) in favor of Associates (a true and correct copy of the Loan Agreement was attached to Stanford's affidavit).

4. The Loan Agreement was secured by the Mortgage dated June 10, 1996, executed by Richardson, as mortgagor, in favor of Associates, as mortgagee, and the Mortgage was recorded on June 12, 1996, in the Bureau of Conveyances, State of Hawai'i, as Document No. 96–082062 (a true and correct copy of the Mortgage was attached to Stanford's affidavit).

5. The Property (more particularly described in Exhibit A to the Mortgage) was located at 54–131 Hauula Homestead Road, Honolulu, Hawai'i 96717, TMK 1/5–4–8–12.

6. Associates was the owner of the Loan Agreement and Mortgage.

7. Richardson had defaulted in the observance and performance of the terms, covenants, and conditions set forth in the Mortgage and in the observance and performance of the terms and conditions of the Loan Agreement when Richardson failed and neglected to pay the principal sum and the interest at the times and in the manner

provided and further failed and neglected to pay the additional Mortgage expenses, advances, and charges incurred or made pursuant to the terms and conditions of the Mortgage.

8. Because of Richardson's breach, Associates exercised its option under the terms and covenants of the Loan Agreement and Mortgage to declare the entire principal balance, together with interest, immediately due and payable. Due notice was given to Richardson of Associates' exercise of its option, although notice was not a precondition to Associates' acceleration of the debt. Therefore, Richardson now owed Associates the following amounts:

| | |
|---|---|
| Principal | $281,843.43 |
| Interest (to 1/15/98) | 10,020.39 |
| Litigation Guarantee | 200.00 |
| | |
| TOTAL DUE | $292,063.82 |

plus per diem interest accrual for each day after January 15, 1998 until paid ($109.50 per diem at 12.99% per year).

A hearing on the Motion for Summary Judgment was set for June 22, 1998 before the Honorable Virginia Lea Crandall.

On June 12, 1998, Richardson filed a pro se counterclaim against Associates, alleging that Associates "failed to provide the required NOTICE OF THE RIGHT TO CANCEL in violation of the Federal Truth in Lending Act (TILA), 15 U.S.C. Sec. 1601 et seq. and 12 C.F.R. Sec. 226.23 (Regulation z)." In his counterclaim, Richardson also alleged that Associates entered into a consumer loan with Richardson on June 10, 1996 on his principal home located at 54–131 Hauula Homestead Road, Honolulu, Hawai'i 96717,[1] and, as part of the subject transaction, Associates took a security interest in Richardson's home. Richardson defaulted on the loan, and therefore Associates filed the foreclosure complaint against Richardson on April 6, 1998.

Among other relief, Richardson requested rescission of the loan between him and Associates.

On June 19, 1998, Richardson filed a pro se memorandum in opposition to the Motion for Summary Judgment. Richardson's opposition to the motion stated as follows:

1. The loan transaction was properly canceled by [Richardson] under the authority of the Truth in Lending Act and Regulation Z on October 21, 1997, by sending a written notice of rescission to [Associates], see attached exhibit "A".

2. The subject loan is void upon the reception of the rescission notice. The validity of the rescission action must be determined before this court can consider summary judgment. The genuine issues of material fact challenge [Associates'] standing as a secured creditor to continue this foreclosure action. [Richardson] provided a sworn affidavit he did not receive the required 2 (two) notice [sic] of the right to cancel, exhibit "B". [Associates] have failed to refute the affidavit or provide any evidence that the notice was properly provided to [Richardson]. [Associates] improperly waived [Richardson's] right to rescission prior to the consumation [sic] of the loan, exhibit "C".

For the above-stated reasons, [Richardson] respectfully submits to this court that [Associates'] Motion be denied and dismissed with prejudice.

Richardson's affidavit (Exhibit B) stated: "I was unclear as to my right to cancel."

On July 2, 1998, Associates filed an answer to Richardson's counterclaim. Associates admitted that Richardson had defaulted on the Loan Agreement and Mortgage, which were the subject of Associates' complaint, and that Richardson had incurred the debt evidenced by the Loan Agreement and Mortgage. Associates denied Richardson's allegations that he had not been provided with a Disclosure Statement or Notice of Right to Cancel the loan and he had three years in which to rescind the loan. Associates raised affirmative defenses of "laches, waiver, estoppel and unclean hands."

---

1. In support of this allegation, Richardson attached as an exhibit the Loan Agreement between him and Associates, which Loan Agreement had been attached as an exhibit to Associates' complaint against Richardson.

Following a June 22, 1998 hearing before the Honorable Allene R. Suemori, an amended notice of hearing was filed on July 2, 1998 continuing the hearing date on the Motion for Summary Judgment to July 13, 1998.

On July 20, 1998, another amended notice of hearing was filed, pursuant to a July 13, 1998 hearing before Judge Suemori, continuing the hearing on the Motion for Summary Judgment to August 3, 1998. Another amended notice of hearing was filed on August 6, 1998, pursuant to another hearing before Judge Suemori on August 3, 1998 at which Richardson was represented by attorney Gary Victor Dubin. The hearing on the Motion for Summary Judgment was continued to August 17, 1998 at the request of Richardson. Richardson and Associates agreed that Richardson could file and serve "opposition papers" by the close of business on August 10, 1998, and Associates could file and serve "reply papers" by the close of business on August 14, 1998.

Richardson filed his memorandum in opposition to the Motion for Summary Judgment on August 10, 1998. Richardson argued that Associates had failed to "satisfy its evidentiary burden" by providing *"admissible* evidence as to all outstanding balances of loan principal and interest claimed due and owing" (emphasis in original); Associates' attorney's affidavit in support of the Motion for Summary Judgment was inadmissible hearsay; and Associates was required to offer "certified copies of the lender's general ledger" in support of its motion.

Richardson argued that the Motion for Summary Judgment did not address Richardson's affirmative defenses or counterclaim [2] and "the allegations of the Complaint and Richardson's affirmative defenses and counterclaims logically represent *one inseparable controversy* that must be decided by one court and at the same time" (emphasis in original). Richardson argued he was entitled to summary judgment based on his affirmative defenses and counterclaims.

Richardson concluded by arguing the Motion for Summary Judgment should be denied pursuant to Hawai'i Rules of Civil

Procedure (HRCP) Rule 56(f) to allow Richardson

> to conduct extensive discovery on the material facts as to waiver, disclosure, delivery, and rescission—procuring documents from the Associates and deposing its loan officers and other fact witnesses, as well as retaining experts on TILA loan documentation for there also appear to be major mistakes in the interest calculations based upon the payments that Richardson has already made and what Associates is alleging to be due and owing after rescission in its papers.

In support of his memorandum, Richardson submitted his declaration (with exhibits), which read as follows:

### DECLARATION OF ARNOLD RICHARDSON

I, ARNOLD RICHARDSON, DECLARE:

1. I am a Defendant and the Counter-Plaintiff in this action, and I have been representing myself *pro se*—until retaining Mr. Dubin on Monday, August 10, 1998.

2. I am 54 years old. I have had no formal education beyond high school. I have resided in Hawaii my entire life. I have lived at the subject residence for more than 36 years.

3. I am not literate in math or complex reading. I have no education, training, or experience in, or understanding of, the fields of banking, lending or finance.

4. On or about June 10, 1996, I was solicited by and secured from Associates Financial Services Company of Hawaii, Inc. ("Associates"), a high-interest second mortgage loan in the amount of $288,102.15 on my personal residence.

5. Less than three years later, while the second mortgage was not in default, I notified Associates that I was canceling the loan. The interest was too high. A true copy of my October 21, 1997, cancellation notice is set forth in Exhibit 1.

6. Replying to my letter, Associates notified me by letter dated October 24, 1997, set forth in Exhibit 2, that it was refusing to honor my notice of cancellation, claiming

---

**2.** Richardson's counterclaim was filed *after* Associates filed its Motion for Summary Judgment.

that I had been given the "required 3–day cancellation period" when the loan closed and I had not canceled the loan transaction when made, and Associates at that time provided me with a copy of the original, signed "Notice Of Right To Cancel", set forth in Exhibit 3, which includes a hand-written notation, as follows:

*note* Recission [sic] was waived by customer and approved per Senior Vice President[.]

7. Associates bases its claimed waiver by me upon a typed May 24, 1996, letter purportedly signed by me, set forth in Exhibit 4, declaring:

I hereby cancel my right to the revised 3 day cancellation clause law due to the pressing circumstances in which I am being assessed a penalty of $1,000.00 per day for storage fees on the equipment I purchased, and for which I am in need of this loan, as stated in my letter faxed earlier to Melinda.

8. However, I cannot type. I do not even recall having seen or signed such a purported waiver letter, which was not my idea, but which was dreamed up and scripted by Associates' loan officer at the time and which is dated *a full three weeks* before the date on "The Notice Of Right To Cancel", *supra*, and apparently dated even before any Truth–In–Lending disclosures were even shown to me so that I could have known what terms I was waiving objection to.

9. Moreover, I was never given the required *two* copies of "The Notice Of Right To Cancel", nor even any required copies of all disclosure statements when the loan closed.

10. A six-month dispute then arose between me and Associates regarding the cancellation of the second mortgage, and Associates filed a foreclosure complaint in this Court on April 6, 1998, alleging non-payment, default, and acceleration, a true copy of which is set forth in Exhibit 5.

11. I responded, *pro se*, with my Answer, set forth in Exhibit 6, alleging misrepresentation, nondisclosure, and unfair and deceptive business practices, and filed a Counterclaim against Associates, set forth in Exhibit 7, alleging various Truth–In–Lending violations, seeking rescission and damages, which Associates has denied in its Answer sent to me, set forth in Exhibit 8.

12. Before the Court currently is Associates' May 26, 1998, "Motion For Summary Judgment And Decree Of Foreclosure As Against All Defendants On Complaint Filed April 6, 1998". Thus far, in its Motion, Associates has not addressed any of my affirmative defenses or my counterclaims.

13. When the loan originally closed, none of my rescission rights were explained to me; I was unclear as to my right to cancel. [Emphasis in original.]

On August 13, 1998, Associates filed its reply to Richardson's opposition memorandum. Associates argued:

1. Richardson admitted the validity of the Loan Agreement and Mortgage and did not deny he was in material default of the same.

2. The loan to Richardson was not a "consumer credit transaction," and therefore TILA, under 15 U.S.C. § 1635, did not apply. Even if TILA did apply, Richardson received and signed the Notice of Rescission and Disclosure Statement required by TILA.

3. Hawaii Revised Statutes (HRS) § 480 et seq. did not apply because the loan to Richardson was not for "primarily personal, family or household purposes," but was for equipment for a business venture.

4. Summary judgment should be granted in favor of Associates because TILA and HRS § 480 et seq. did not apply to the mortgage loan and it was undisputed that Richardson was in default of the repayment terms of the Loan Agreement and Mortgage.

In support of its reply memorandum, Associates attached an Affidavit of Melinda Cambra (Cambra), with exhibits, in which she stated the following:

1. She had personal knowledge of and was competent to testify to the matters stated in the affidavit because she was the former Waianae Branch Manager and is the current Kapolei Branch Manager of Associ-

452

ates and had reviewed the records and files of the mortgage loan to Richardson.

2. Attached as an exhibit was a true and correct copy of the Loan Agreement between Richardson and Associates with her signature on the document signifying that she witnessed Richardson's signature to the Note.

3. Attached as an exhibit was a true and correct copy of the Mortgage between Richardson and Associates with her signature signifying she witnessed Richardson's signature to the Mortgage.

4. Attached as an exhibit was a copy of Richardson's driver's license, contained in the loan file, that indicated Richardson resided at Keaka Drive, Honolulu, Hawai'i.

5. Attached as an exhibit was a May 24, 1996 letter faxed to her by Richardson indicating the purpose of the loan was to allow Richardson to purchase trucking equipment for use in his business.

6. Attached as an exhibit was a May 28, 1996 letter faxed to her by Richardson setting forth Richardson's joint venture agreement, which would operate the heavy equipment purchased with the loan proceeds.

7. Attached as an exhibit was a document provided to Associates by Richardson of the list of equipment he purchased with the loan proceeds.

8. Attached as an exhibit was a May 24, 1996 waiver letter signed by Richardson, executed pursuant to Richardson's request prior to closing the loan that he be allowed to waive the three-day rescission period because he desperately wanted to avoid storage fees on the equipment he purchased.

9. Attached as an exhibit was a copy of the Notice of Right to Cancel with Richardson's signature, which she witnessed.

10. Attached as an exhibit was a copy of the Disclosure Statement with Richardson's signature, which she witnessed.

11. She clearly recalled that "two copies of the Notice of Right to Cancel and copy of the Disclosure Statement were delivered to Mr. Richardson during the loan closing."

On August 17, 1998, Richardson filed a "Notice of Oral Motion to Strike 'Plaintiff's Motion for Summary Judgment and Decree of Foreclosure as Against All Defendants on Complaint Filed April 6, 1998, Filed May 26, 1998', or, in the Alternative, for Leave to File His Supplemental Memorandum in Opposition Thereto Attached as Exhibit 'A'" (Motion to Strike) (a copy of his supplemental memorandum was attached as an exhibit) on the grounds that Associates' reply was filed *"barely two court days before the scheduled August 17, 1998, hearing"* (emphasis in original). Attached to his Motion to Strike was Richardson's supplemental declaration, in which he stated:

1. The $5,000 check he gave Associates was not intended as an admission he owed Associates anything.

2. The subject Property had always been his principal residence.

3. Associates had always known the subject Property had been his principal residence and the Keaka Drive property was a mailing address.

4. The loan was to invest funds in a local company for his retirement and pay down other personal liens and personal bills.

Also attached to Richardson's Motion to Strike were:

1. Declarations of Irma Sai and Stan Alapa collaborating Richardson's statements about his mailing address.

2. A Supplemental Declaration of Gary Victor Dubin, Richardson's attorney, and a copy of Mr. Dubin's driver's license. Mr. Dubin stated in his declaration that he had many friends and clients who used their mailing address, not their residence address, on their driver's license, as does he.

On August 17, 1998, a hearing on the Motion for Summary Judgment was held before the Honorable Gail Nakatani.[3] Judge Nakatani took the motion under advisement. On November 24, 1998, Judge Nakatani filed her findings of fact, conclusions of law, and order granting the motion for summary judgment and decree of foreclosure against all

3. Judge Nakatani did not entertain Richardson's

"oral motion" contained in his Motion to Strike.

defendants named in the complaint. Also, on November 24, 1998, pursuant to HRCP Rules 54(b) and 58, the final Judgment signed by Judge Nakatani was filed.

On December 4, 1998, Richardson filed a motion for reconsideration of Judge Nakatani's November 24, 1998 findings, conclusions, order, and judgment. Richardson's motion was denied by Judge Nakatani by the Order Denying Motion for Reconsideration filed May 14, 1999. Judge Nakatani found and concluded that Richardson presented "no new arguments and/or evidence which was not or could not have been previously presented and considered by the Court."

On June 14, 1999, Richardson filed his notice of appeal of the FoF/CoL/Order, Judgment, and Order Denying Motion for Reconsideration.

## II.

## POINTS ON APPEAL

Richardson contends the circuit court erred when it:

(a) granted summary judgment and a decree of foreclosure because there was no admissible evidence in Associates' motion papers properly brought before the circuit court establishing any loan default, contradicting Richardson's affirmative defenses and counterclaims based upon federal Truth–in–Lending laws and the voidance requirements of HRS § 480–12, or disproving Richardson's contention that he had entered into a settlement agreement with Associates.

(b) allowed Associates to file its late reply memorandum for the August 17, 1998 summary judgment hearing while refusing to allow Richardson to file and refusing to consider Richardson's supplemental memoran-

dum in response to Associates' reply memorandum.

(c) denied Richardson a continuance of the August 17, 1998 summary judgment hearing to permit needed discovery by Richardson.

(d) did not rule that Associates "was estopped by the doctrine of judicial admissions and/or by contractual agreement from contesting whether Richardson had a right to rescind the underlying loan transaction for TILA violations." [4]

## III.

## STANDARDS OF REVIEW

### A.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56(c).

> A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Hawaii Community Fed. Credit Union v. Keka (Keka )*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (internal quotation marks, citations, and brackets omitted) (quoting *Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000)).

4. Richardson fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) in his opening brief by failing to quote the finding or conclusion urged as error and failing to state where in the record a number of the points of error occurred. "Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice plain error not presented." HRAP Rule 28(b)(4). Richardson does not include the circuit court's denial of his motion for reconsidera-

tion of the court's findings, conclusions, order, and summary judgment and decree of foreclosure in his points of error.

Richardson fails to comply with HRAP Rule 28(b)(3) by failing to append to his opening brief a copy of the Judgment and FoF/CoL/Order relevant to any point on appeal.

Richardson fails to comply with HRAP Rule 28(b)(8) in not setting out verbatim relevant parts of statutes and regulations pertaining to his points of error.

An appellate court reviews a grant or denial of a summary judgment motion under the de novo standard. *Keka,* 94 Hawai'i at 221, 11 P.3d at 9.

## B.

■ The circuit court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) shall not be reversed absent an abuse of discretion.

[T]he request must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact. An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Josue v. Isuzu Motors America, Inc.,* 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (internal quotation marks and brackets omitted).

## IV.

### DENIAL OF RICHARDSON'S REQUEST TO CONTINUE HEARING ON MOTION FOR SUMMARY JUDGMENT

■ Richardson contends the circuit court erred when it denied him a continuance of the August 17, 1998 summary judgment hearing to allow him time to conduct needed discovery. In support of his contention, Richardson cited HRCP Rule 56(f) (1998), which stated:

**Rule 56. Summary judgment.**

. . . .

(f) *When affidavits are unavailable.* Should it appear *from the affidavits of a party* opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. [Emphasis added.]

Richardson did not, as required by HRCP Rule 56(f), "make an adequate request for a continuance for the purpose of completion of discovery." *Acoba v. General Tire, Inc.,* 92 Hawai'i 1, 12, 986 P.2d 288, 299 (1999). Richardson did not by affidavit (or declaration) "demonstrate how postponement of a ruling on the motion would enable [him], by discovery or other means, to rebut [Associates'] showing of absence of a genuine issue of fact." *Id.*

In his opposition memorandum, Richardson argued that he needed to "conduct extensive discovery on the material facts as to waiver, disclosure, delivery, and rescission." Richardson's declaration in support of this argument stated he was uneducated and had acted pro se in this case, had been solicited by Associates, had canceled the loan, and was not properly notified by Associates of his right to cancel, and discussed in general the issues in the case with Associates. Nowhere in his declaration did Richardson demonstrate how the requested continuance would enable him through obtained discovery to rebut Associates' showing of absence of a genuine issue of fact.

The circuit court did not abuse its discretion in denying Richardson's request for a continuance.

## V.

### ASSOCIATES' REPLY

■ Richardson argues the circuit court erred in allowing Associates to file a reply memorandum and affidavits "barely two days" before the date of the summary judgment hearing. At the time Associates filed its Motion for Summary Judgment and reply memorandum in 1998, HRCP Rule 56(c) read as follows:

**Rule 56. Summary judgment.**

. . . .

(c) *Motion and proceedings thereon.* The motion shall be filed and served not less than 18 days before the date set for the hearing. The adverse party may file and serve opposing memorandum and/or affidavits not less than 8 days before the date set for the hearing. *The moving party may file and serve a reply or affida-*

*vit not less than 3 days before the date set for the hearing.* The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. [Emphasis added.]

In 1998, Hawai'i Rules of the Circuit Courts (HRCC) Rule 7(b) read as follows:

**Rule 7.   Form of motions.**

. . . .

(b) *Opposition and reply.* An opposing party may serve and file counter affidavits and a memorandum in opposition to the motion, which shall be served and filed not less than 8 days before the date set for the hearing, except as otherwise provided by the Hawai'i Rules of Civil Procedure or ordered by the Court. The movant may file and serve a reply not less than 3 days before the date set for the hearing. A reply must respond only to arguments raised in the opposition. Unless permitted by another rule or statute, no party may file or serve any papers other than those provided for in this rule. No party may file any papers less than 3 days before the date set for the hearing unless otherwise ordered by the court.

Both HRCP Rule 56(c) and HRCC Rule 7(b) stated that a reply memorandum and any supporting documents shall be filed not less than three days[5] before the hearing, unless otherwise ordered by the court. When Richardson's attorney argues that Associates' reply was filed late, he has apparently forgotten that in his declaration attached to Richardson's opposition memorandum, Richardson's attorney stated:

4.   However, at the August 3, 1998, hearing, at the insistence of [Associates' counsel], Judge Suemori requested that my office file and serve our opposition papers by noon that Thursday, August 6, 1998; however, three days proved inadequate time for me to become familiar with the files and the issues in the case while serving the needs of my other clients last week, *so I requested of [Associates' counsel] his permission for me to file and serve these opposition papers by the close of business today, Monday, August 10, 1998, and he agreed, provided that he could have until the close of business this Friday, August 14, 1998, to file and serve reply papers, and I similarly agreed.* [Emphasis added.]

Also, attached as Exhibit 12 to Richardson's opposition memorandum was a copy of a fax dated August 6, 1998 from his attorney to Associates' attorney confirming the above.

Associates filed its reply on August 13, 1998—a day earlier than the agreed upon date. Clearly, the filing of Associates' reply did not violate either HRCP Rule 56(c) or HRCC Rule 7(b) because the reply was timely filed pursuant to an agreement of the parties and approved by the circuit court. The circuit court did not therefore err in accepting and considering Associates' reply.

## VI.

### SUMMARY JUDGMENT

■   The summary judgment issued by the circuit court was based in part on the following "findings of fact" contained in the FoF/CoL/Order filed November 24, 1998:

Sunday or a holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays and holidays shall be excluded in the computation. As used in this rule, "holiday" includes any day designated as such pursuant to section 8–1 of the Hawaii Revised Statutes.

---

5.   HRCP Rule 6(a) (1998) provided:

**RULE 6.   Time.**

(a) *Computation.* In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a

*FINDINGS OF FACT*

1. Plaintiff ASSOCIATES FINANCIAL SERVICES COMPANY OF HAWAII, INC. ("ASSOCIATES") is, and at all times mentioned herein was, a Hawaii corporation, organized and existing under the laws of the State of Hawaii, and doing business in the City and County of Honolulu, State of Hawaii.

2. Defendant ARNOLD RICHARDSON ("Defendant RICHARDSON") is and at all times relevant herein was a resident of the City and County of Honolulu, State of Hawai'i, and owns the fee simple interest in the property which is the subject of this foreclosure ("the property").

3[.] On or about June 10, 1996, Defendant RICHARDSON, for value received, made, executed and delivered to ASSOCIATES a Loan Agreement dated June 10, 1996 ("Note"), in the principal amount of TWO HUNDRED EIGHTY–EIGHT THOUSAND ONE HUNDRED TWO AND 15/100 DOLLARS ($288,102.15) in favor of ASSOCIATES.

4. The Note was secured by that certain real estate Mortgage, also dated June 10, 1996 ("Mortgage"), executed by Defendant RICHARDSON as mortgagor, in favor of ASSOCIATES as mortgagee, and this Mortgage was recorded on June 12, 1996, in the Bureau of Conveyances, State of Hawaii, as Document No. 96–082062.

5. The property, more particularly described in Exhibit A to the Mortgage and in Exhibit 1 hereto, is located at 54–131 Hauula Homestead Road, Honolulu, Hawaii 96717, TMK 1/5–4–8–12.

6. ASSOCIATES is owner of the Note and Mortgage.

7. Defendant RICHARDSON has defaulted in the observance and performance of the terms, covenants and conditions set forth in the Mortgage, and in the observance and performance of the terms and conditions of the Note in that Defendant RICHARDSON has failed and neglected to pay the principal sum thereof and the interest thereon at the times and in the manner therein provided, and has further failed and neglected to pay the additional Mortgage expenses, advances and charges incurred or made pursuant to the terms and conditions of the Mortgage.

8. By reason of this breach, ASSOCIATES exercised its option under the terms and covenants of the Note and Mortgage to declare the entire principal balance under the Note and Mortgage, together with interest, immediately due and payable; due notice was given to Defendant RICHARDSON of ASSOCIATES' exercise of its option, although notice is not a precondition to ASSOCIATES' acceleration of the debt. Therefore, the following is now due and payable:

| | |
|---|---:|
| Principal | $281,843.43 |
| Interest (to 8/12/98) | 25,603.55 |
| Litigation Guarantee | 200.00 |
| Advances for insurance | 4,507.00 |
| TOTAL DUE | $312,153.98 |

plus per diem interest accrual for each day after August 12, 1998, until paid (currently $109.50 per diem at 12.99% per year).

9. By reason of the above facts, ASSOCIATES is entitled to the foreclosure of the Mortgage and to the sale of the property.

10. The Mortgage provides that in the event of foreclosure, ASSOCIATES may be awarded all sums secured by the Mortgage, including reasonable attorneys' fees and all costs, expenses or advances made necessary or advisable or sustained by ASSOCIATES for the benefit or protection of the Mortgage or in connection therewith.

11. Defendant BANK OF HAWAII, which is organized and existing under the laws of the State of Hawaii, claims an interest in the property by virtue of that mortgage dated August 5, 1986, and recorded on August 7, 1986, in the Bureau of Conveyances, State of Hawaii, in Book 19744, Page 269.

12. Defendant CITY AND COUNTY OF HONOLULU, which is a municipal corporation established and existing pursuant to the laws of the State of Hawaii, claims an interest in the property by virtue of delinquent real property taxes, penalties, and interest.

a) ASSOCIATES' Mortgage is junior and subordinate to interest herein of De-

fendant CITY AND COUNTY OF HONO-LULU, and to the mortgage, if valid and subsisting, of Defendant BANK OF HA-WAII, but is otherwise prior and superior to all other claims and interests to the property.

13. The Court finds that the following material facts, relevant to the issue of the applicability of the Truth in Lending Act (hereinafter, "Regulation Z") are not in dispute:

a) It is undisputed that the mortgaged property was not the "principal dwelling" of Defendant RICHARDSON: in his Declaration, Defendant RICHARDSON merely states that he has lived at the "subject residence for more than 36 years"; however, Defendant RICHARDSON does not identify the specific address.

b) It is also undisputed that the purpose of the loan was to purchase heavy equipment for a joint venture between Defendant RICHARDSON and Moses Kaina; as such, the Court concludes that Regulation Z with its rescission rights did not and does not apply to ASSOCIATES' Note and Mortgage.

14. Further, the Court finds that it is undisputed that Defendant RICHARDSON is in material default of the repayment terms of the Note and Mortgage.

15. Based upon the foregoing findings of fact, the Court concludes that there are no genuine issues of material fact with respect to ASSOCIATES' Motion for Summary Judgment and Decree of Foreclosure.

The admissible evidence contained in Associates' reply in the form of Cambra's affidavit and attached exhibits, and no conflicting admissible evidence offered by Richardson in response, support the findings of fact of the circuit court, with the exception of Findings of Fact 13 (concerning the applicability of TILA) and 15 (stating there were no genuine issues of material fact).

The conflicts in Cambra's affidavit in support of Associates' reply and Richardson's declaration in support of his opposition memorandum demonstrate a genuine issue of material fact as to the applicability of TILA.

The pertinent statements and the exhibits attached to Cambra's affidavit are:

1. the copy of Richardson's driver's license, taken from his loan file, that indicated Richardson did not live on the premises which secured the loan;

2. letters faxed to Cambra by Richardson indicating the purpose of the loan was for the purchase of trucking equipment for use in his business and a copy of the joint venture agreement that would operate the equipment;

3. a copy of the May 24, 1996 letter signed by Richardson waiving the three-day rescission period required by TILA;

4. copies of the Notice of Right to Cancel and Disclosure Statement signed by Richardson; and

5. Cambra's statement that two copies of the Notice of Right to Cancel and a copy of the Disclosure Statement were delivered to Richardson during the loan closing.

The pertinent statements in Richardson's declaration are:

1. he did not waive the three-day rescission period required by TILA;

2. he "was never given the required two copies of 'The Notice of Right to Cancel'" nor "any required copies of all disclosure statements when the loan closed";

3. when the loan closed, none of his rescission rights were explained to him and he was unclear as to his right to cancel; and

4. less than three years after the loan on his "personal residence" was executed between Richardson and Associates, Richardson notified Associates he was canceling the loan.

TILA required Associates (as the lender) to provide Richardson (as the borrower) "with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and borrower's rights." *Keka*, 94 Hawai'i at 223, 11 P.3d at 11 (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410, 140 L.Ed.2d 566 (1998)). Under TILA, if the

loan was secured with Richardson's "principal dwelling," Richardson had within three years from the execution of his loan to rescind the loan transaction if the required disclosures were never made. *Keka*, 94 Hawai'i at 223, 11 P.3d at 11.

The conflicting evidence from Cambra and Richardson as to whether Richardson's "personal residence" secured the loan and whether Associates made the disclosures to Richardson required by TILA create genuine issues of material fact as to the applicability of TILA and the rescission of the loan by Richardson.

Richardson's supplemental declaration attached to his Motion to Strike stated the loan was to invest funds in a local company for his retirement and to pay down other personal liens and personal bills. Although this supplemental declaration was not considered by the circuit court nor referred to in its Finding of Fact 13, this statement as to the purpose of the loan conflicts with the evidence in Cambra's affidavit with exhibits that Richardson's loan was for a business purpose. Under 15 U.S.C. § 1603(1), loans "primarily for business ... purposes" are exempt from TILA, as opposed to loans "primarily for personal, family, or household purposes," which are covered by TILA under 15 U.S.C. § 1602(h). Had the circuit court considered Richardson's statement that the loan was not primarily for a business purpose, but was for personal purposes, the circuit court could not have concluded there were no genuine issues of material fact on the applicability of TILA as to the purpose of the loan.

In demonstrating the absence of genuine issues of material facts, the party moving for summary judgment

> has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. *Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.*

*GECC Financial Corp. v. Jaffarian* (*Jaffarian*), 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.), *aff'd and modified*, 80 Hawai'i 118, 905 P.2d 624 (1995) (emphasis added and citations omitted).

Associates did not satisfy its burden in moving for summary judgment when it first filed its motion because Stanford's affidavit, unlike Cambra's affidavit, was inadmissible hearsay that could not serve as the basis for awarding summary judgment. *Keka*, 94 Hawai'i at 221–23, 11 P.3d at 9–11. It was not until Associates filed its reply, curing the inadequate affidavit of Stanford, that the burden was met. Since the circuit court allowed Associates to file an affidavit and exhibits in its reply that should have been filed with its original motion, Richardson should have been given the opportunity to respond by the circuit court's accepting and considering his supplemental declaration. Associates did not satisfy its burden of production as to admissible evidence in support of its claims until its reply was filed with the circuit court. That is when the burden shifted to Richardson to respond that there were genuine issues worthy of trial.

> The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, and *any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party.*

*Jaffarian*, 79 Hawai'i at 521, 904 P.2d at 535 (emphasis added and citation omitted).

Therefore, the circuit court erred in granting Associates' Motion for Summary Judgment and in its Findings of Fact 13 and 15 because it should have considered Richardson's supplemental declaration and concluded there were genuine issues of material fact as

to the applicability of TILA [6] and the rescission of the loan by Richardson.[7]

## VII.

### ESTOPPEL

Richardson contends "the doctrine of judicial · admissions and/or by contractual agreement" estopped Associates from "contesting whether Richardson had a right to rescind the underlying loan transaction for TILA violations." Richardson cites *Rosa v. CWJ Contractors, Ltd.*, 4 Haw.App. 210, 664 P.2d 745 (1983), in support of his argument. In *Rosa*, a breach of contract case, plaintiffs argued inconsistent positions. Under one position, plaintiffs argued that a prior defendant was a separate entity in order to overcome defendant's motion to dismiss. Conversely, plaintiffs argued that the prior defendant and a current defendant were in privity in order to obtain a summary judgment against the current defendant. This court held that "[t]he result was an internally inconsistent final decision, prejudicing [defendant]. Since the trial court accepted [plaintiffs'] . . . theory of action in denying [defendant's] motion to dismiss, the [plaintiffs] could not subsequently repudiate such a position in their motion for summary judgment." *Id.* at 220, 664 P.2d at 752. However, while equitable estoppel or judicial estoppel prevents a party from assuming inconsistent positions in the same proceeding, it "does not preclude a party from pleading inconsistent claims or defenses within a single action." *Id.* at 219, 664 P.2d at 752; HRCP Rule 8(e)(2) (1998).[8]

The present case is distinguishable from *Rosa* because Associates' claims were made within a single action and are permitted by HRCP Rule 8(e), which allows parties to state separate claims alternatively or hypothetically, regardless of consistency. The circuit court did not err when it did not preclude Associates from contesting Richardson's contention that he rescinded the loan transaction for TILA violations.

## VIII.

### CONCLUSION

Accordingly, we affirm Findings of Fact 1 through 12 and 14 and Conclusion of Law 1 [9] of the FoF/CoL/Order, vacate the remainder of the FoF/CoL/Order, vacate the November 24, 1998 Judgment, and remand this case to the circuit court for further proceedings consistent with this opinion.

Counsel for Richardson is warned that future non-compliance with HRAP Rule 28 may result in sanctions against him.

### DISSENTING OPINION BY LIM, J.

Associates filed its motion for summary judgment and supporting papers on May 26,

---

6. These genuine issues of material fact also go to Richardson's claim under HRS § 480–12 (1993), which states that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." HRS § 480–2(a) (1993) declares that prescribed "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

7. Richardson's statement in his supplemental declaration that he gave Associates a $5,000 check did not create a genuine issue of material fact that Richardson entered into a settlement agreement, as contended by Richardson in his points of appeal. Richardson presented no other evidence in support of this contention in his opposition to the Motion for Summary Judgment.

8. HRCP Rule 8(e) states:

   **Rule 8. General rules of pleading.**
   . . . .

   (e) *Pleading to be concise and direct; consistency.*

   (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

   (2) *A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.* When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. *A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both.* All statements shall be made subject to the obligations set forth in Rule 11. [Emphasis added.]

9. Conclusion of Law 1 addresses the jurisdiction of the circuit court. All other conclusions of law . to some degree relate to Findings of Fact 13 and 15, which were in error.

1998. Later, on June 12, 1998, Richardson filed his counterclaim. Therein, Richardson raised his TILA/Regulation Z defenses. Therein, Richardson also admitted his default, which rendered immaterial any deficiencies in Associates' initial moving papers relevant thereto. Thus were left only Richardson's defenses, and to Richardson the burden of proof. *GECC Financial Corp. v. Jaffarian*, 79 Hawaii 516, 521, 904 P.2d 530, 535 (App. 1995), *aff'd and modified*, 80 Hawaii 118, 905 P.2d 624 (1995).

In his June 19, 1999 *pro se* memorandum in opposition to summary judgment and in his August 10, 1998 additional memorandum in opposition to summary judgment, Richardson raised various matters in support of his TILA/Regulation Z defenses. However, those matters notwithstanding, papers attached to Associates' August 13, 1998 reply raised additional matters proving that Richardson's loan was for business purposes. But for Richardson's August 17, 1998 motion to strike purporting to raise "genuine" issues of material fact as to the business purposes issue, that proof would have been fatal to Richardson's defense.

Richardson agreed to the briefing schedule terminating in Associates' August 13, 1998 reply. He should be held to his agreement.

Moreover, he should not be permitted to sandbag by holding back matters in support of his defenses and thereby, in effect, creating a claim to the last word. *Cf. Takayama v. Kaiser Foundation Hospital*, 82 Hawaii 486, 496, 923 P.2d 903, 913 (1996) ("as a general rule, a party is bound to give all available evidence in support of an issue in the first instance it is raised at trial and will not be permitted to hold back evidence confirmatory of its position to offer on rebuttal"). Our decision today invites the abusive multiplication of "genuine" issues of material fact, for the mere purpose of strategic delay, evident here. After all, Richardson did not attempt to cancel the loan because of any ignorance or confusion about the financing caused by misrepresentation or nondisclosure on the part of Associates. He attempted to cancel the loan because, in his own words, "The interest was too high."

I would affirm, and therefore respectfully dissent.